UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>MIGUEL SOTELO,<br><br>Movant. | No.  2:14-cr-0113 KJM DB<br><br>FINDINGS AND RECOMMENDATIONS AND ORDER |

Movant, a federal prisoner, proceeds pro se with a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Movant pleaded guilty to possession with intent to distribute methamphetamine in 2015 and asserts ineffective assistance of counsel and other errors in connection with his guilty plea and sentencing. The motion to vacate (ECF No. 51), amended motion to vacate (ECF No. 63), government's opposition (ECF No. 84), and movant's reply (ECF No. 86) are before the court.

For the reasons set forth, the undersigned will direct the government to inform the court, pursuant to United States v. Sandoval-Lopez, 409 F.3d 1193 (9th Cir. 2005), whether it elects to pursue an evidentiary hearing on movant's claim that trial counsel failed to file a notice of appeal. The undersigned will recommend the court deny movant's other grounds for relief as barred by his waiver of the right to collaterally attack the sentence, as set forth in the plea agreement.

////

1

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.     Conviction, Sentence, and Notice of Appeal**

On July 16, 2015, movant pleaded guilty to Count I of the indictment, possession with intent to distribute at least 50 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1). (ECF No. 27 at 2; ECF No. 50 at 12.) In exchange for movant's guilty plea, two other counts were dismissed. In addition, the government promised to recommend a sentence at the low end of the applicable United States Sentencing Guidelines ("USSG" or "Guidelines") range, as determined by the court, and to seek a reduction in exchange for movant's substantial assistance. (ECF No. 27 at 1, 2, 5; ECF No. 50 at 6, 12.)

The plea agreement provided "[i]f the defendant violates this plea agreement in any way, withdraws his plea, or tries to withdraw his plea, this plea agreement is voidable at the option of the government. (Id. at 3.) In that case, "[t]he government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein." (Id. at 3-4.)

As part of the plea agreement, movant waived his right to appeal unless the government appealed or the court imposed a sentence in excess of 192 months or the statutory maximum. (ECF No. 27 at 9.) The plea agreement stated, specific to collateral attack, "regardless of the sentence the defendant receives, the defendant also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims." (Id. at 9-10.)

On November 12, 2015, the court sentenced movant to a 132-month term of imprisonment and imposed a fine in the amount of $25,000. (ECF No. 83 at 12.) Judgment was entered on November 19, 2015. (ECF No. 35.) An amended judgment correcting a clerical error was entered on December 4, 2015. (ECF No. 36.)

On February 4, 2016, movant filed a pro se belated notice of appeal accompanied by a supporting statement in which he described attempts to contact his retained counsel, Paul Irish, about filing a notice of appeal. (ECF No. 37.) The appeal was processed to the United States Court of Appeals for the Ninth Circuit. (ECF No. 38.)

On May 18, 2016, the Ninth Circuit dismissed movant's appeal as untimely. (ECF No. 43.) The order of dismissal stated the dismissal did not foreclose movant from filing a 28 U.S.C. § 2255 motion in the district court claiming ineffective assistance of counsel for failure to file a notice of appeal. (Id.)

**II.    28 U.S.C. § 2255 Motion and Amendment**

Movant filed the initial motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 on April 24, 2017. (ECF No. 51.) On March 7, 2019, movant requested leave to amend and filed an amended motion under 28 U.S.C. § 2255. (ECF Nos. 62, 63.) The amended motion incorporates movant's initial motion and sets forth three additional grounds for relief. The government's opposition (ECF No. 84) has responded to all grounds asserted.

Additional claims may relate back to timely filed § 2255 motions. See Fed. R. Civ. P. 15(c); Anthony v. Cambra, 236 F.3d 568, 576 (9th Cir. 2000). An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). Pro se motions from prisoners are to be liberally construed. United States v. Jackson, 21 F.4th 1205, 1216 (9th Cir. 2022). Movant's request to amend and add the three additional claims is granted.

Movant presents the following five grounds for relief:[1] (1) counsel failed to file a notice of appeal after movant instructed counsel to file a notice of appeal (ECF No. 51 at 4); (2) counsel failed to fully investigate movant's prior criminal history in preparation for sentencing (Id. at 5); (3) movant is eligible for safety valve treatment under 18 U.S.C. § 3353(f) based on subsequent Ninth Circuit authority to be applied retroactively (ECF No. 63 at 1-2); (4) counsel failed to conduct a proper investigation for the purposes of arguing favorable factors under 18 U.S.C. § 3553(a) at sentencing (Id. at 2-3); and (5) the court erred in imposing a fine and counsel invited the error by failing to argue movant's § 3553 equities (Id. at 3).

////

////

---

[1] Movant raised grounds one and two in the initial motion to vacate. Grounds three, four and five, as designated herein, are the additional grounds raised in the amended motion to vacate.

### III. Government's Opposition

The government contends movant waived his right to collaterally attack the sentence. (ECF No. 84 at 13-17.) The government also argues movant's prior conviction remains a controlled substance offense unaffected by subsequent Ninth Circuit authority\, movant's fine was not imposed in error, and movant failed to allege sufficient facts to establish his counsel was ineffective. (Id. 21-33.) As to counsel's alleged failure to file the notice of appeal, the government agrees movant initially instructed Mr. Irish to file a notice of appeal on his behalf. (Id. at 20.) However, the government argues the claim should be dismissed or denied because the government contends movant omitted critical facts in presenting the claim and because the government contends movant, through a third party, ultimately instructed counsel not to file a notice of appeal. (Id. at 17-20.)

## LEGAL STANDARDS FOR 28 U.S.C. § 2255

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States... may move the court which imposed the sentence to vacate, set aside or correct the sentence." See also Davis v. United States, 417 U.S. 333, 344-45 (1974). To warrant relief, the prisoner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. Brecht v. Abrahamson, 507 U.S. 619, 637 (1993); see also United States v. Montalvo, 331 F.3d 1052, 1058 (9th Cir. 2003) ("Brecht's harmless error standard applies to habeas cases under section 2255[.]"). Relief is warranted only upon the showing of "a fundamental defect which inherently results in a complete miscarriage of justice." Davis, 417 U.S. at 346.

Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case *conclusively* show that the prisoner is entitled to no relief.'" United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir. 1994) (emphasis in original) (quoting 28 U.S.C. § 2255). The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for

1  relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal."

2  United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir. 1996). To earn the right to a hearing,

3  therefore, the movant must make specific factual allegations which, if true, would entitle him to

4  relief. Id. Mere conclusory statements in a section 2255 motion are insufficient to require a

5  hearing. United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir. 1980).

## DISCUSSION

### I. Movant Waived his Right to Present Grounds Two through Five

Specific to collateral attacks, movant's plea agreement waived "any right to bring a collateral attack, including a motion under 28 U.S.C. § 2255" challenging "any aspect of the guilty plea, conviction, or sentence, except for non-waivable claims." (ECF No. 27 at 9-10.) The government contends movant's claims are barred by this collateral attack waiver, except for the claim alleging counsel failed to file a notice of appeal. (ECF No. 84 at 13.)

### A. Legal Standards for Waiver of Collateral Attack

A defendant may waive the statutory right to collaterally attack his sentence or conviction. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993). Such a waiver is enforceable if "(1) the language of the waiver encompasses [the defendant's] right to appeal on the grounds raised, and (2) the waiver is knowingly and voluntarily made." United States v. Goodall, 21 F.4th 555, 561 (9th Cir. 2021) (addressing the closely related topic of appeal waivers).

Nevertheless, a waiver does not bar a claim that challenges the validity of the waiver itself. See Abarca, 985 F.2d at 1014 ("we do not hold [the] waiver categorically forecloses… any section 2255 proceeding, such as a claim of ineffective assistance of counsel or involuntariness of waiver"). If such a claim is asserted, the defendant bears the burden to show the plea agreement was not knowing and voluntary. United States v. Michlin, 34 F.3d 896, 900 (9th Cir. 1994).

### B. Ineffective Assistance of Counsel/ Voluntariness of Plea

Claims that the plea or waiver was involuntary or that ineffective assistance of counsel rendered the plea or waiver involuntary cannot be waived. Abarca, 985 F.2d at 1014; see also Davies v. Benov, 856 F.3d 1243, 1246 n.2 (9th Cir. 2017); Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005), cert. denied, 54 U.S. 1074 (2006). In his reply brief, movant argues for the

5

1    first time that his guilty plea was the product of counsel's inaccurate advice regarding the
2    criminal history category applicable to movant under the USSG. (ECF No. 86 at 2.) Movant
3    argues counsel's ineffective assistance rendered his plea involuntary. (Id. at 2.) Movant argues he
4    asserted this ground for relief in his motion to vacate but the government did not properly
5    comprehend the claim. (Id.)

6          The court need not consider arguments raised for the first time in a reply brief. See
7    Zamani v. Carnes, 491 F.3d 990, 997 (9th Cir. 2007). In this instance, though, the undersigned
8    will consider and reject the argument.

9          Movant states he pleaded guilty because his counsel affirmatively misadvised him his
10   Criminal History Category was I, for a Guidelines range of 125-168 months, that he would
11   receive a two-point safety valve reduction, and that the government would move for a sentence
12   reduction, such that "he would almost certainly receive a sentence of around 108 months." (ECF
13   No. 86 at 2-4.) This advice was wrong, movant argues, because at sentencing, the parties agreed
14   his applicable Criminal History Category was II and he was not eligible for a safety valve
15   reduction. (Id. at 3.) Movant asserts if counsel had conducted a competent investigation into his
16   prior criminal history, counsel would have known movant's criminal history would be Category
17   II such that he faced a higher sentencing range and was ineligible for safety valve. (Id.) Movant
18   asserts counsel's incorrect advice induced him to plead guilty. (Id.)

19         As support for this argument, movant notes the plea agreement indicated the parties
20   estimated at the time of the plea that movant's Criminal History Category would be I, that a two-
21   level safety valve reduction to the offense level would apply "provided the defendant is eligible,"
22   and that with a Criminal History Category of I and an Adjusted Offense Level of 33, movant's
23   Guidelines range would be 135-168 months. (ECF No. 27 at 8.). The plea agreement stated: "The
24   government and the defendant agree that the [foregoing] is their *present best estimate* of the
25   sentencing guidelines variables. These estimates shall not be binding on the Court, the Probation
26   Office, or the parties." (ECF No. 27 at 8 (emphasis added).)

27         The Sixth Amendment right to the effective assistance of counsel extends to the plea-
28   bargaining process, including the decision whether to accept or reject a plea offer. See Lafler v.

Cooper, 566 U.S. 156, 162 (2012); see also Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). However, movant fails to show ineffective assistance rendered his plea or waiver involuntary.

There are two components to an ineffective assistance of counsel claim: deficient performance and prejudice. See Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Deficient performance means representation that "fell below an objective standard of reasonableness[.]" Stanley, 633 F.3d at 862 (citing Strickland, 466 U.S. at 688). To show deficient performance, movant must overcome a "strong presumption" that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Carrera v. Ayers, 670 F.3d 938, 943 (9th Cir. 2011). To overturn the strong presumption of adequate assistance, movant must demonstrate the challenged action cannot reasonably be considered sound strategy under the circumstances of the case. See Lord v. Wood, 184 F.3d 1083, 1085 (9th Cir. 1999).

The relevant question as to counsel's performance is "not on whether a court would retrospectively consider counsel's advice to be right or wrong," but instead, "whether that advice was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. 759, 771 (1970). In this case, to establish deficient performance, movant must demonstrate more than a "mere inaccurate prediction" and instead must demonstrate counsel "grossly mischaracterized" the likely outcome of a plea bargain. Sophanthavong v. Palmateer, 378 F.3d 859, 868 (9th Cir. 2004); see also Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990); Iaea v. Sunn, 800 F.2d 861, 864-65 (9th Cir. 1986).

Movant alleges counsel advised him he would "almost certainly" receive a sentence of 108 months. However, the court imposed a sentence of 132 months. (ECF No. 83 at 12.) Even accepting as true movant's allegation that counsel gave incorrect advice as described, counsel's inaccurate prediction does not rise to the level of a gross mischaracterization of the likely outcome, and thus does not constitute ineffective assistance of counsel. See Doganiere, 914 F.2d

at 168 (counsel's prediction of "not more than twelve years imprisonment" upon entering a guilty plea did not grossly mischaracterize the imposed sentence of fifteen years imprisonment); compare Chacon-Palomares, 208 F.3d at 1158-60 (holding the district court erred in denying a § 2255 motion without an evidentiary hearing where the defendant, who received a 108-month sentence, argued his lawyer was ineffective because he induced him to reject a plea offer by incorrectly informing him he faced a maximum sentence of six months); see also United States v. Briggs, 623 F.3d 724, 729 (9th Cir. 2010) (affirming the denial of a defendant's motion to withdraw his guilty plea when the defendant expected a sentence of 200 months and received a sentence of 324 months).

Movant argues counsel should have known through additional investigation—prior to the time of the plea—that movant's criminal history made him a Category II under the USSG such that he faced a higher sentencing range and was ineligible for safety valve. (ECF No. 86 at 3.) Defense counsel has a "duty to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary." Strickland, 466 U.S. at 691. "However, 'the duty to investigate is not limitless.'" Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001) (citation omitted.)

At movant's sentencing hearing, the court inquired about the intent of the parties at the time of the plea agreement with respect to the applicable Criminal History Category and safety valve eligibility. (ECF No. 83 at 4.) Counsel placed on the record that documentation available at the time of the plea appeared to reflect movant had served less than 13 months on his prior conviction in Spokane County, Washington, leading the parties to believe movant would fall within Criminal History Category I and that the safety valve reduction could be applied. (Id.) However, probation ultimately determined the sentence for that prior conviction was more than 13 months, such that the applicable Criminal History Category was II, and the safety valve reduction did not apply. (Id.)

Had counsel conducted further investigation prior to the plea, counsel might have discovered the relevant information. But the court does not determine the reasonableness of counsel's advice based on hindsight and information subsequently available. See Carrera, 670

1  F.3d at 943; Premo v. Moore, 562 U.S. 115, 125 (2011) ("strict adherence to the Strickland
2  standard [is] all the more essential when reviewing the choices an attorney made at the plea
3  bargain stage").

4  Given the information counsel had at the time, the court cannot find "no competent
5  attorney" would have advised movant to take the plea agreement without conducting further
6  investigation into movant's criminal history. Similarly, the court cannot find counsel's challenged
7  action cannot reasonably be considered sound strategy under the circumstances of the case.

8  The plea agreement obtained several benefits for movant. Rejecting the agreement and
9  proceeding to trial would have exposed movant to additional convictions, the maximum sentence
10  for the methamphetamine count in Count I, and loss of the reduction for acceptance of
11  responsibility. The presentence investigation report indicated if movant had been convicted of the
12  dismissed firearms count, Count III, in addition to the methamphetamine count in Count I, the
13  applicable imprisonment range would have been 235 to 293 months. (See ECF No. 29 at 14.) The
14  plea agreement also secured the government's promise to recommend the low-end of the
15  Guidelines range, as determined by the court, and to seek a reduction in exchange for movant's
16  substantial assistance. (See Id. at 5-6.) Under the circumstances, movant fails to establish
17  deficient performance under Strickland.

18  In addition, movant fails to show his plea agreement was not knowing and voluntary
19  because of counsel's advice. The Supreme Court has instructed, "[c]ourts should not upset a plea
20  solely because of post hoc assertions from a defendant about how he would have pleaded but for
21  his attorney's deficiencies," and "should instead look to contemporaneous evidence to
22  substantiate a defendant's expressed preferences." Lee v. United States, 137 S. Ct. 1958, 1967
23  (2017); see also Briggs, 623 F.3d 724, 729 (9th Cir. 2010) (affirming the denial of a defendant's
24  motion to withdraw his guilty plea when the defendant expected a sentence of 200 months and
25  received a sentence of 324 months).

26  First, movant acknowledged in the plea agreement he understood it was the "best
27  estimate" of the parties at that time that his Criminal History Category would be I and that a two-
28  level safety valve reduction to the offense level would apply, such that his Guidelines range

9

would be 135-168 months. The plea agreement specifically stated: "The government and the defendant agree that the [foregoing] is their present best estimate of the sentencing guidelines variables." (ECF No. 27 at 8.) And further, "[t]hese estimates shall not be binding on the Court, the Probation Office, or the parties." (Id.)

Second, movant acknowledged in the plea agreement he understood the court was not a party to the agreement, sentencing was within the sole discretion of the court, the court was not required to follow the government's sentencing recommendation, and the court could impose a sentence up to the statutory maximum. (ECF No. 27 at 2.) Movant acknowledged the maximum sentence he could receive was 40 years of imprisonment. (Id. at 7.) The information regarding the sentencing maximum was repeated by the court during the change of plea, as were the facts that the sentencing guideline factors applicable to movant's case were not yet determined, and that the court was not bound by the parties' plea agreement. (ECF No. 50 at 7-9.)

Prior to sentencing, the applicable sentencing guideline factors were reflected in movant's presentence investigation report. (ECF No. 29 at 14.) The presentence investigation report stated although the parties had anticipated movant being Criminal History Category I and safety valve eligible, probation ultimately determined movant was Criminal History Category II given his prior state prison sentence. (ECF No. 29 at 14.)

At the sentencing hearing, movant confirmed to the court he had reviewed the presentence investigation report with his attorney. (ECF No. 83 at 3.) Movant's counsel and counsel for the government put on the record that additional information received from probation about movant's prior offense after the plea agreement made clear that movant did not fall within Criminal History Category I and that he was not eligible for safety valve reduction. (Id. at 5-6.) Movant did not seek to withdraw his plea. See Fed. R. Crim. P. 11(d)(2)(B).

As set forth above, movant received substantial benefits for his plea and waivers. Viewing all the relevant circumstances, movant's claim he was induced to plead guilty by the counsel's inaccurate advice that he would be a Criminal History Category I, be safety valve eligible and receive a 108-month sentence is without merit. Movant fails to show ineffective assistance of counsel rendered his guilty plea involuntary.

1                   **C.      Movant's Collateral Attack Waiver**

2          Examining the waiver itself, movant's plea agreement provided as to collateral attacks:

3  "regardless of the sentence the defendant receives, the defendant also gives up any right to bring a

4  collateral attack, including a motion under 28 U.S.C. § 2255 or § 2241, challenging any aspect of

5  the guilty plea, conviction, or sentence, except for non-waivable claims." (ECF No. 27 at 9-10.)

6          "A defendant's waiver of his rights to appeal and to bring a collateral attack is generally

7  enforced if '(1) the language of the waiver encompasses his right to appeal on the grounds raised,

8  and (2) the waiver is knowingly and voluntarily made.'" Davies, 856 F.3d at 1246-47 (quoting

9  United States v. Jeronimo, 398 F.3d 1149, 1153 (9th Cir. 2005)). Such a waiver is enforceable

10 even though the defendant "may not know the specific detailed consequences of invoking it,"

11 United States v. Ruiz, 536 U.S. 622, 629-30 (2002), and may "not be aware of possible grounds

12 of appeal" or "the severity of the sentence that will be imposed," United States v. Lo, 839 F.3d

13 777, 784 (9th Cir. 2016).

14         At a change of plea hearing, "[a] district court is required to inform the defendant of 'the

15 terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the

16 sentence.'" Lo, 839 F.3d at 785; see also Fed. R. Crim. P. 11(b)(1)(N) (requiring the court to

17 personally address the defendant in open court to determine the defendant understands the terms

18 of any plea agreement provision waiving the right to appeal or to collaterally attack the sentence).

19 If the district court does so, the Ninth Circuit has held that such procedure is sufficient to find a

20 knowing and voluntary waiver. Lo, 839 F.3d at 785.

21         Movant's waiver of the right to collaterally attack his plea and sentence is enforceable.

22 First, the waiver language in his plea agreement specifically encompassed collateral attacks on his

23 conviction and sentence under § 2255, except as to non-waivable claims. See Davies, 856 F.3d at

24 1246-47. Second, the court's inquiry established movant knowingly and voluntarily waived his

25 right to collaterally attack his conviction and sentence under § 2255. See Id. In addition to signing

26 the plea agreement, movant verbally informed the court at the change of plea hearing he

27 understood the terms of his plea agreement, including the waiver of his right to appeal or

28 collaterally attack the sentence. (ECF No. 50 at 5-6.) Later, the court again asked whether movant

understood that by entering his plea of guilty, he was waiving or giving up his right to collaterally attack or appeal all or any part of his guilty plea, the conviction, or the sentence imposed, and movant responded affirmatively. (Id. at 9-10.)

The court's "diligent colloquy" satisfied Rule 11 of the Federal Rules of Criminal Procedure and therefore supports a conclusion that movant knowingly and voluntarily entered into his plea agreement and the waivers contained therein. United States v. Watson, 582 F.3d 974, 987 (9th Cir. 2009); Lo, 839 F.3d at 785. A defendant's representations at a plea hearing constitute "a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977). "[S]olemn declarations in open court carry a strong presumption of verity." United States v. Ross, 511 F.3d 1233, 1236-37 (9th Cir. 2008). "Statements made by a defendant contemporaneously with his plea are therefore accorded great weight. (Id.) In signing the plea agreement and verbally agreeing he understood its terms, including the waiver of his right to collaterally attack his sentence, movant thereby waived the right.

As set forth above, movant's grounds two through five assert challenges to the sentence, including sentencing error and ineffective assistance of counsel at sentencing. (ECF No. 51 at 4-5; ECF No. 63 at 1-3.) These grounds are barred under the collateral attack waiver of movant's knowing and voluntary plea agreement. See United States v. Bolinger, 940 F.2d 478, 480 (9th Cir. 1991) (waiver of the right to appeal waives a claim the court misapplied the sentencing guidelines); United States v. Nunez, 223 F.3d 956, 959 (9th Cir. 2000) (defendant who waives the right to appeal a sentence also waives "the right to argue ineffective assistance of counsel at sentencing"). On this basis, grounds two through five should be denied.

**II.  Ineffective Assistance of Counsel for Failure to File the Notice of Appeal**

Movant claims his retained attorney failed to file a notice of appeal despite movant's explicit instruction for counsel to do so. The government does not seek to apply movant's appeal waiver or collateral attack waiver to this claim. (See ECF No. 84 at 13.)

**A.  Additional Background**

On February 4, 2016, movant filed a pro se belated notice of appeal accompanied by a supporting statement in which he described attempts to contact his retained counsel, Mr. Irish,

12

about filing a notice of appeal. (ECF No. 37.) Movant stated Mr. Irish met with him on November 13, 2015, regarding the filing of a notice of appeal, and promised to return on Monday, November 16, 2015 "to finalize all the discussions and financial arrangements[.]" (Id. at 2.) However, Mr. Irish did not return to the jail on November 16, 2015, and on November 17, 2015, movant was transferred to a federal detention center in Nevada. (Id.) Movant states he and his wife, Eva Sotelo, both attempted to contact Mr. Irish regarding the filing of a notice of appeal "to no avail." (Id.)

Movant's pro se appeal was processed to the United States Court of Appeals for the Ninth Circuit. (ECF No. 38.) On March 8, 2016, Mr. Irish filed a motion to be relieved as attorney of record in the Ninth Circuit. (ECF No. 84-2.) In a declaration accompanying that motion, Mr. Irish stated he had assumed another attorney was representing movant on appeal because that attorney contacted him on November 12, 2015, and subsequently picked up movant's criminal case file from Mr. Irish's office for the purpose of filing the appeal. (Id. at 3-4.)

The government submitted a further declaration by Mr. Irish in opposition to the § 2255 motion, stating the following, in pertinent part:

> On or about November 12, 2015, Miguel Sotelo was sentenced in this matter. According to my records, on November 13, 2015, I met with Mr. Sotelo in the Sacramento County Jail. *At that time, he asked me to file a notice of appeal*, despite my admonition that the plea agreement's provisions precluded filing that notice. *I agreed that I would file the notice on his behalf* with the understanding that I would not represent him on appeal and that he would appeal as a pro se defendant.

(ECF No. 84-1 at 4 (emphasis added).)

On or about November 17, 2015, Mr. Irish's office unsuccessfully attempted to file the notice of appeal on behalf of movant, pro se. (ECF No. 84-1 at 4, 50.) Following that attempt, and on the same day, Mr. Irish communicated with court staff in the Clerk's Office about whether the filing fee had to be paid in order for the notice of appeal to be filed under these circumstances. (Id. at 53.)

On November 18, 2015, movant's wife, Eva Sotelo, contacted Mr. Irish's office and left a message that she wished to discuss "the notice of appeal." (ECF No. 84-1 at 4, 55.) According to

Mr. Irish's declaration, movant frequently communicated with Mr. Irish through Mrs. Sotelo. (Id. at 2.) According to Mr. Irish's declaration, Mr. Irish returned Eva Sotelo's call on the same day and Mrs. Sotelo informed him movant had retained attorney Ellen Dove to handle his appeal. (Id. at 4.) Mr. Irish "understood at the time from Mrs. Sotelo that Ms. Dove intended to file the notice of appeal" and that he should do no further work on the case. (Id. at 4-5.) Attorney Dove picked up movant's criminal case file from Mr. Irish's office on November 19, 2015. (Id. at 4.) As set forth, the time for filing a notice of appeal expired and a timely notice of appeal was not filed.

### B. *Strickland* Standards for Failure to File Notice of Appeal

If an allegation of attorney incompetence involves defense counsel's failure to file a notice of appeal, the initial question is whether the defendant explicitly instructed counsel to appeal: "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." Roe v. Flores-Ortega, 528 U.S. 470, 477, (2000). "At the other end of the spectrum, a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." Id. "If counsel has not consulted with the defendant, the court must in turn ask a second, and subsidiary, question: whether counsel's failure to consult with the defendant itself constitutes deficient performance." Id. at 478.

Prejudice is presumed if a defendant is deprived of an appeal that he waived but nevertheless tried to assert. Garza v. Idaho, 139 S. Ct. 738, 749 (2019); United States v. Fabian-Baltazar, 931 F.3d 1216, 1217 (9th Cir. 2019). This presumption of prejudice applies "regardless of whether a defendant has signed an appeal waiver," because "even the broadest appeal waiver does not deprive a defendant of all appellate claims. Garza, 139 S. Ct. at 749; Fabian-Baltazar, 931 F.3d at 1217. On the other hand, if deficient performance is found in counsel's failure to consult the defendant about an appeal, then prejudice is shown if the defendant demonstrates 'a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed.'" Flores-Ortega, 528 U.S. at 484; see also Fabian-Baltazar, 931 F.3d at 1217 (noting the Supreme Court in Garza expressly left undisturbed Flores-Ortega's separate discussion of how to approach "situations in which a defendant's wishes are less clear").

14

### C.     Evidence in the Record and Evidentiary Hearing

Movant signed the initial 28 U.S.C. § 2255 motion under penalty of perjury, and claims "I personally instructed my counsel to file a notice of appeal which he ultimately disregarded." (ECF No. 51 at 4.) The government asserts this claim should be dismissed because movant omitted critical facts in presenting the claim. (ECF No. 84 at 17.) However, the court liberally construes movant's pro se motions See Jackson, 21 F.4th at 1216.

Pointing to Mr. Irish's declarations, the government argues movant omitted from his motion that he retained a different attorney, Ellen Dove, roughly one week after the judgment and sentencing hearing to file the notice of appeal, and that he had instructed Mr. Irish to stand down and take no further action. (ECF No. 84 at 17.) Whether or not Ms. Dove was ultimately retained for the appeal is not currently established in the record. Fully crediting Mr. Irish's declarations, it was Mr. Irish's subjective understanding from speaking to Ms. Dove and/or Mrs. Sotelo that he was to do no further work on the case. Nevertheless, movant had explicitly instructed Mr. Irish to file the notice of appeal and, as discussed below, did not personally rescind that instruction. There is, further, no evidence movant personally instructed Mr. Irish to stand down as argued by the government. Under the circumstances, Mr. Irish's communications with Mrs. Sotelo and the collection of movant's case file from Mr. Irish's office by another attorney's office did not necessarily discharge his duty to file the notice of appeal. Dismissal of the claim for "omission of facts" is unwarranted.

The government next argues movant "may have at first instructed [Mr. Irish] to file a notice of appeal, but he rescinded that instruction." (ECF No. 84 at 17.) Fully crediting Mr. Irish's declarations, there is no evidence movant personally rescinded the instruction to file a notice of appeal. Based on Mr. Irish's declaration, it was Mr. Irish's subjective understanding from speaking to Mrs. Sotelo that movant no longer wanted Mr. Irish to file the notice of appeal. After speaking with Mrs. Sotelo, however, Mr. Irish did not confirm or consult with movant.

The government's argument assumes it was reasonable for counsel to communicate with Mrs. Sotelo, rather than movant, and to rely on her representations concerning movant's decision as to whether Mr. Irish should file the notice of appeal as movant had previously instructed him to

15

do. According to Mr. Irish's declaration, Mrs. Sotelo was very involved in movant's case and routinely communicated with counsel on movant's behalf. However, the decision whether to take an appeal is personal to the client. See Flores-Ortega, 528 U.S. at 479 ("the decision to appeal rests with the defendant"); Jones v. Barnes, 463 U.S. 745, 751 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal.").

Because the decision whether to take an appeal is personal to the client, it would have been unreasonable for counsel to rely solely on the representations of Mrs. Sotelo rescinding movant's instructions to file the notice of appeal without confirming the decision or Mrs. Sotelo's authority for the decision with movant. See Battaglini v. United States, 198 F. Supp. 3d 465, 473 (E.D. PA. 2016) (counsel performed deficiently in relying on the representations of a client's spouse as to the client's decision whether to take an appeal). In Battaglini, 198 F. Supp. 3d at 473, as in this case, the defendant's spouse was "very involved" with the criminal case and "routinely communicated with [c]ounsel on [defendant's] behalf." See Id. Even so, because the decision whether to take an appeal is personal to the client, and because there was no evidence of a power of attorney or other authorization for the spouse to act on behalf of the defendant, the court found counsel performed deficiently in relying on the spouse's instruction without confirming the decision or the spouse's authority for the decision. Id. (citing Flores-Ortega, 528 U.S. at 478).

In this case, on the record currently before the court, counsel similarly did not consult or confirm with movant after speaking to Mrs. Sotelo and reportedly receiving a directive rescinding movant's instruction to file the notice of appeal. On the record currently before the court, there is no evidence movant entered a power of attorney or otherwise authorized Mrs. Sotelo to act on his behalf concerning the decision whether to take an appeal.

If movant's sworn statement is fully credited, then his motion should be granted under Garza, 139 S. Ct. at 747, because he instructed counsel to file a notice of appeal and counsel failed to do so. If Mr. Irish's declarations are also fully credited, then this conclusion remains unchanged, absent additional evidence. If the court considers the claim under the "failure to consult" rule of Flores-Ortega, 528 U.S. at 478, applied when a defendant's wishes are "less

clear," then it still appears counsel performed deficiently by unreasonably failing to consult with movant, absent additional evidence.

Accordingly, movant is entitled to an evidentiary hearing for the court to take evidence on matters relevant to the inquiries under Garza and Flores-Ortega.[2] Prior to any such hearing, if appointment of counsel is warranted, then the court will, sua sponte, appoint counsel to represent movant at the evidentiary hearing.

In the alternative, the government may elect to forego an evidentiary hearing. See Sandoval-Lopez, 409 F.3d at 1198 (noting "[t]he government might choose this alternative to free itself from the restraint of the plea bargain, or because getting the appeal dismissed would be less work than an evidentiary hearing"). If the government elects to forego an evidentiary hearing, then the undersigned will recommend the court vacate and reenter the judgment, assuming without deciding that movant explicitly instructed counsel to file the notice of appeal.

> If a defendant, even one who has expressly waived his right to appeal, files a habeas petition after sentencing and judgment claiming that he ordered his attorney to appeal and his attorney refused to do so, two things can happen. The district court can hold an evidentiary hearing to decide whether petitioner's allegation is true, and if it is, vacate and reenter the judgment, allowing the appeal to proceed. In the alternative, if the [government] does not object, the district court can vacate and reenter the judgment without a hearing and allow the appeal to proceed, assuming without deciding that the petitioner's claim is true.

Sandoval-Lopez, 409 F.3d at 1198; see also Fabian-Baltazar, 931 F.3d at 1218 (citing Sandoval options in remand to district court). Accordingly, the government shall notify the court whether it elects to pursue an evidentiary hearing on movant's claim that trial counsel failed to file a notice of appeal.

////

////

---

[2] The Ninth Circuit's warning to the petitioner in Sandoval-Lopez is worth referencing here, in that it may be very foolish to risk losing the current plea bargain to proceed with an appeal under circumstances including an appeal waiver. "Nevertheless the client has the constitutional right… to bet on the possibility of winning the appeal and then winning an acquittal, just as a poker player has the right to hold the ten and queen of hearts, discard three aces, and pray that when he draws three cards, he gets a royal flush." Sandoval-Lopez, 409 F.3d at 1198-99.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED:

1. Movant's request to amend the 28 U.S.C. § 2255 motion incorporating the previous motion and asserting three additional grounds (ECF No. 62) is GRANTED.

2. The government shall inform the court within 30 days whether it elects to pursue an evidentiary hearing on ground one of the § 2255 motion, claiming movant instructed counsel to file a notice of appeal and counsel failed to do so.

In addition, IT IS HEREBY RECOMMENDED that grounds two through five of the motion to vacate under 28 U.S.C. § 2255 (ECF Nos. 51, 63) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within thirty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If movant files objections, they shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  March 21, 2022

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

8.sote03.2255frhrg